UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| UNITED STATES OF AMERICA | CRIMINAL ACTION |
|---|---|
| VERSUS | NO. 18-14 |
| GUADALUPE HERRERA-PEREZ | SECTION "F" |

ORDER AND REASONS

Before the Court is Guadalupe Herrera-Perez's motion to dismiss indictment. For the following reasons, the motion is DENIED.

**Background[1]**

Twenty-two years ago, at age 18, Guadalupe Herrera-Perez appeared for a removal hearing at which the immigration judge ordered that he be removed from the United States to Mexico. Challenging the jurisdiction of the immigration judge and the constitutionality of the removal proceedings all those years ago, and additionally challenging the government's ability to prove

---

[1] This summary of the record is drawn from the submissions of the defendant and the government. The Court makes no factual findings and takes as true the bill of information for the purposes of resolving the motion to dismiss.

1

that he is an "alien," Herrera-Perez now moves to dismiss the bill of information charging him with illegal reentry by a previously deported alien, in violation of 8 U.S.C. § 1326.

A self-claimed native and citizen of Mexico, Guadalupe Herrera-Perez first entered the United States on April 3, 1980.[2] On December 8, 1997, he was convicted of theft in Harris County, Texas. A month later, he was interviewed by immigration enforcement agents; he told them he was a Mexican citizen and national. Just a week later on January 16, 2018 -- while still in immigration custody -- Herrera-Perez claimed that he was born in the United States and had no living family members. But he recanted this claim of U.S. citizenship when asked to provide a sworn statement.

That same day, Herrera-Perez was personally served a Notice to Appear before an immigration judge at a date "[t]o be calendared and notice provided by the office of the Immigration Judge. Notice will be mailed to the address provided by the respondent." He acknowledged service of the notice and acknowledged being provided, along with the notice, a notice of appellate rights and a list of attorneys and organizations who may be available to represent him. He indicated on the form that he requested an

---

[2] Herrera-Perez admitted to these facts under oath during an immigration proceeding.

immediate hearing in which he specifically waived his "right to have a 10-day period prior to appearing before an immigration judge."

Along with seven other individuals, Herrera-Perez appeared for an immigration hearing on January 27, 1998. The immigration judge advised Herrera-Perez that he was facing removal because he had been charged with entering the United States illegally and because he had been convicted of a crime while in the United States. The immigration judge explained that she could postpone the hearing if Mr. Herrera-Perez wanted to consult an attorney; he declined. The immigration judge then explained other rights attendant to the removal proceeding, such as the right to present evidence and witnesses or to question any government witnesses. At that time, Mr. Herrera-Perez and the other respondents were placed under oath. Mr. Herrera-Perez admitted that he was a native and citizen of Mexico who had illegally entered the United States on April 3, 1980. The immigration judge explained that Mr. Herrera-Perez may be eligible to apply for cancellation of removal and asked what he wanted to do. "I want to be deported," Mr. Herrera-Perez stated. When asked whether he accepted the deportation order or whether he wished to appeal it to a higher court, he stated "I accept this order." The deportation order and

warrant issued that same day. Mr. Herrera-Perez was then deported to Mexico.

Soon after he was deported, Mr. Herrera-Perez illegally reentered the United States sometime in February 1998 at Brownsville, Texas. On September 10, 1998, Mr. Herrera-Perez was convicted of aggravated robbery in Harris County, Texas, and sentenced to 10 years imprisonment. On July 12, 1999, Mr. Herrera-Perez was personally served, and acknowledged receipt of, a Notice of Reinstatement of Prior Order. On July 21, 1999, a warrant for removal was issued, and on August 11, 2008, Mr. Herrera-Perez again was removed from the United States to Mexico.

Soon thereafter, again he returned, reentering the United States just two months later in October 2009. On April 26, 2011, Mr. Herrera-Perez was convicted in Harris County, Texas for failure to identify to police officers/giving false information; he was sentenced to eight days' confinement and released to the custody of federal immigration authorities. On May 27, 2011, Mr. Herrera-Perez pleaded guilty to the charge of illegal reentry of a previously deported alien after an aggravated felony conviction; on August 16, 2011, he was sentenced to be imprisoned for 27 months. He was removed from the United States to Mexico on May 24, 2013.

4

The latest Form I-213 (Record of Deportable/Inadmissible Alien), dated November 28, 2017, indicates that Mr. Herrera-Perez admitted to reentering the United States without inspection near Brownsville, Texas in December 2014, just seven months after his last deportation. On November 26, 2017, Mr. Herrera-Perez was arrested in Jefferson Parish; two days later, he was transported to the custody of the Department of Homeland Security. On January 23, 2018, Mr. Herrera-Perez was charged by bill of information with illegal reentry by a previously deported alien in violation of 8 U.S.C. § 1326.[3] He now seeks to dismiss the bill of information.

I.

"A party may raise by pre-trial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Cr. P. 12(b)(1). For example, a criminal defendant may challenge an indictment for its defective failure to state an offense. See Fed. R. Cr. P. 12(b)(3)(B)(v). An indictment or bill of information must contain "a plain, concise, and definite written statement of the essential facts constituting the offense charged[.]" Fed. R. Cr. P. 7(c). To determine whether an offense has been stated, the Court takes as true the

---

[3] On January 30, 2018, Mr. Herrera-Perez waived an indictment.

indictment's allegations. See United States v. Fontenot, 665 F.3d 640, 644 (5th Cir. 2011)(citation omitted). Determining whether it is proper to grant a motion to dismiss an indictment largely depends "upon whether the infirmity in the prosecution is essentially one of law or involves determinations of fact." Id. (quoting United States v. Flores, 404 F.3d 320, 324 (5th Cir. 2005)). That is, a Court may properly dismiss counts of an indictment when purely legal questions are presented by a motion to dismiss. See id. However, "[a] defendant may not properly challenge an indictment, sufficient on its face, on the ground that the allegations are not supported by adequate evidence[.]" See United States v. Mann, 517 F.2d 259, 267 (5th Cir. 1975). To be sure, "[t]here is no federal criminal procedural mechanism that resembles a motion for summary judgment in the civil context." United States v. Yakou, 428 F.3d 241, 246 (D.C. Cir. 2005)(citations omitted).

II.

In Count 1 of the one-count bill of information, the United States Attorney charges that:

> On or about November 26, 2017, in the Eastern District of Louisiana, the defendant, GUADALUPE HERRERA-PEREZ, an alien, was found in the United States after having been officially ordered deported and removed therefrom on or about January 28, 1998, and without the Attorney General of the United States or his designated successor, the Secretary of the Department of Homeland Security, as

6

> provided for in Title 6, United States Code, Sections
> 202(3), 202(4), and 557, having expressly consented to
> the defendant's reapplication for admission into the
> United States; all in violation of Title 8, United States
> Code, Section 1326(a).[4]

Advancing three grounds, Mr. Herrera-Perez urges the Court to dismiss the bill of information. Considering each in turn, the Court finds that there was no jurisdictional defect in the immigration removal proceeding, he may not collaterally challenge the removal order underlying this criminal proceeding, and the bill of information is valid on its face such that any factual disputes must be presented to the jury.

*A.*

First, Mr. Herrera-Perez submits that the immigration court lacked jurisdiction to issue the January 1998 removal order on which his illegal reentry charge is predicated. His counsel concedes, however, that "this issue may be foreclosed by Fifth Circuit precedent[.]" Indeed, it is.

Mr. Herrera-Perez contends that the Notice to Appear he received on January 16, 1998, which failed to include the date and

---

[4] There is also a Notice of Sentencing Enhancement in the bill of information to give notice that, due to Mr. Herrera-Perez's prior aggravated felony conviction, if he is convicted of illegal reentry, he will be subject to a maximum sentence of imprisonment for not more than 20 years.

time of his removal proceedings,[5] was defective and insufficient to invoke the immigration court's jurisdiction. His arguments are foreclosed by Pierre-Paul v. Barr, 930 F.3d 684, 688-89 (5th Cir. 2019), *petition for cert. pending.*

Herrera-Perez invokes Pereira v. Sessions, 138 S. Ct. 2105, 2113-14 (2018). To be sure, there, the Supreme Court held that "[a] putative notice to appear that fails to designate the specific time or place of the noncitizen's removal proceedings is not a 'notice to appear under [8 U.S.C. §] 1229(a),' and so does not trigger the stop-time rule." Id. at 2113-14 (looking to the "statutory text...to resolve" the question and siding with Pereira that service of a notice to appear that lacked the information required under the statute did not stop the clock on his period of continued presence). But the issue presented in Pereira is distinguishable from that urged by Herrera-Perez; the statutory and regulatory requirements for what constitutes a valid notice to appear in immigration proceedings differ: here, the regulations (including 8 C.F.R. § 1003.14) -- not 8 U.S.C. § 1229(a), the statute at issue in Pereira -- govern what a notice to appear must

---

[5] It provided: "YOU ARE ORDERED to appear before an immigration judge...at: To be calendared and notice provided by the office of the Immigration Judge. Notice will be mailed to the address provided by the respondent." The notice to appear reflected that Herrera was at that time in the custody of the Immigration and Naturalization Service.

8

contain in order to constitute a valid charging document in the posture of Herrera-Perez's case. See Pierre-Paul, 930 F.3d at 693; see also United States v. Pedroza-Rocha, 933 F.3d 490, 496 (5th Cir. 2019), *petition for cert. pending*. For this reason, the Fifth Circuit has specifically rejected attempts like Herrera-Perez's to apply Pereira beyond the narrow issue presented, which pertained to whether a notice to appear that omits the time or place of the initial hearing triggers the *statutory* stop-time rule[6] for cancellation of removal. See Pierre-Paul, 930 F.3d at 688-89 (rejecting Pierre-Paul's attempt to extend Pereira's narrow holding beyond the stop-time rule context and "join[ing] the overwhelming chorus of our sister circuits that have already rejected similar Pereira-based challenges"). The Fifth Circuit explained:

> Pereira turned on the intersection of two statutory texts and the word "under" that glued the stop-time rule to the time-and-place requirement.... However, the regulations do not carry such glue and are not textually bonded to 8 U.S.C. § 1229(a).
> ...
> Conflicts between the regulations and 8 U.S.C. § 1229(a) arise and implicate Pereira only when the government attempts to use a notice to appear that omits the time

---

[6] The stop-time rule under the Illegal Immigration Reform and Immigration Responsibility Act of 1996 is not at issue here; it provides that "an alien's 'period of ... continuous physical presence' is 'deemed to end ... when the alien is served a notice to appear under [8 U.S.C. § 1229(a)]." Pierre-Paul, 930 F.3d at 689 (quoting 8 U.S.C. § 1229b(d)(1)).

> or place to satisfy one of the statutorily defined functions that are textually glued to 8 U.S.C. § 1229(a).

Id. at 689-90 (internal citations omitted). Applying Pierre-Paul, Herrera-Perez's notice to appear was not defective under the applicable regulations, which do not require that the notice to appear contain the date and time. See id. ("under 8 C.F.R. § 1003.14, proceedings before an immigration judge commence when a charging document is filed. To constitute a valid charging document, the regulations require that a notice to appear list the nature of the proceedings, the legal authority of the proceedings, and the warning about the possibility of *in abstentia* removal[.] The government must include the time, date, and place of the initial hearing only 'where practicable.'")(internal citations omitted).

Pierre-Paul's alternative holding is likewise binding[7] and equally dooms Mr. Herrera-Perez's contention that the immigration court lacked jurisdiction. That is, regardless of whether the notice to appear was defective, the defect was not jurisdictional, but merely a claim-processing rule. See id. at 691-92 ("We agree with the Seventh Circuit's treatment of 8 C.F.R. § 1003.14 as a claim-processing rule."). "Because 8 C.F.R. § 1003.14 is a non-

---

[7] See id. at 689 n.2 ("In this circuit, alternative holdings are binding[.]").

10

jurisdictional, claim-processing rule, any alleged defect with the charging document must be raised properly and can be forfeited if the alien waits too long to raise it." See id. at 693. It is undisputed that, before now, Mr. Herrera-Perez has never challenged the validity of his notice to appear.[8] Even if Herrera-Perez received a defective notice to appear, the immigration court was not deprived of jurisdiction to adjudicate his removal from the United States. Mr. Herrera-Perez's jurisdictional challenge to the underlying removal order fails.

*B.*

Second, Mr. Herrera-Perez contends that the deportation order serving as the predicate for the pending illegal reentry charge resulted from constitutionally deficient proceedings. In order to collaterally challenge the prior removal proceeding, the government counters that he must satisfy the three gateway requirements, which he has failed to do. The Court agrees. Section 1326(d) precludes Mr. Herrera-Perez's collateral attack on the validity of his removal order.

---

[8] It is undisputed that Mr. Herrera-Perez signed the notice to appear form and requested an immediate hearing, forfeiting his right to a 10-day period prior to appearing before an immigration judge. Mr. Herrera-Perez appeared and participated in the 1998 immigration hearing during which he admitted to being a Mexican national and citizen and specifically consented to removal while also declining to apply for cancellation and declining to appeal.

Congress has proscribed "collateral review in the course of re-entry prosecutions [to] a narrow set of circumstances." United States v. Parrales-Guzman, 922 F.3d 706, 707 (5th Cir. 2019). Thus, to collaterally challenge a deportation order, 8 U.S.C. § 1326(d) requires that a defendant demonstrate these three prerequisites: (1) he exhausted all administrative remedies to seek relief against the order; (2) the removal proceedings improperly deprived him of the opportunity for judicial review; and (3) the entry of the removal order was fundamentally unfair. See 8 U.S.C. § 1326(d); see also Parrales-Guzman, 922 F.3d at 707. If all three gateway requirements are met, to succeed on a due process claim, the defendant must also demonstrate that a defect in the immigration proceedings caused him "actual prejudice" by showing that there was a reasonable likelihood that, but for the errors complained of, the defendant would not have been deported. United States v. Benitez-Villafuerte, 186 F.3d 651, 658-59 (5th Cir. 1999).

Mr. Herrera-Perez's attempt to collaterally challenge the underlying removal order fails at the first prong. He admits that he did not exhaust the administrative remedies available to him. He did not seek to review or to reopen the 1998 removal order. In fact, the transcript of his 1998 removal proceeding additionally

shows that he was advised about his appellate rights and, even so advised, he declined to appeal.[9]

> **Judge**: [A]ll of you gentlemen have a paper which looks like this on one side and that on the other. On this side of the paper is a list of attorneys and organizations in the Houston area who represent people in immigration proceedings at little or not cost. On the other side of the paper is a Notice of Appeal Rights. At the end of your case, I will make a decision about it. If you disagree with my decision, you have a right to appeal it to a higher court in Washington, D.C. This paper further explains your appeal rights to you.
>
> ...
>
> **Judge**: Mr. Herrera, you -- you might be eligible to apply for what's called cancellation of removal or cancellation of deportation. This would be the only way you could avoid being deported and stay in the United States. To get a cancellation of deportation, you would have to fill out a form and file it with me. You would have to have a hearing on the form probably in about six to eight weeks. And at the hearing, you would have to prove to me that you've lived here in the United States for ten years, that you've been a person of good moral character during that time, and that your deportation would result in exceptional and extremely unusual hardship to either a wife, parent or child who's a U.S. citizen or permanent resident. Now, if you want me to give you the application form and have you back in court next week to file it with me, I will do that. If you don't want to do any of this, then I really have no choice except to sign an order deporting you. What do you want to do?
> **Herrera-Perez**: I want to be deported.
> **Judge**: All right. Because of your theft conviction, I am going to use my discretion and sign and order

---

[9] "[A] valid waiver of the right to appeal a deportation order precludes a later collateral attack." See United States v. Garza-Sanchez, 217 F.3d 806, 808 (9th Cir. 2000).

> deporting you. Do you accept this order or do you wish to appeal it to a higher court?
> **Herrera-Perez:** I accept this order.
> **Judge:** All right, Mr. Herrera. Thank you. You can go with the bailiff. Please remember what I said about the possible consequences of coming back illegally.
> **Herrera-Perez:** Yes, ma'am.

Having failed to exhaust administrative remedies, Mr. Herrera-Perez is barred under 8 U.S.C. § 1326(d)(1) from collaterally attacking his removal order. See Parrales-Guzman, 922 F.3d at 707; see also Pedroza-Rocha, 933 F.3d at 498.

*C.*

Third and finally, Mr. Herrera-Perez submits that the government cannot prove one of the elements of the charged offense; specifically, he submits that the government cannot prove that he is an "alien." The government counters that this is an improper challenge to the sufficiency of the evidence, and because Mr. Herrera-Perez does not advance a valid facial challenge to the charge contained in the bill of information, dismissal is not appropriate. The Court agrees. The bill of information states a valid offense; the sufficiency of the government's evidence is for the jury.

To be convicted of illegal reentry of a previously deported alien, the jury must be convinced beyond a reasonable doubt that the government has proved each of these elements: (1) the defendant

14

was an alien; (2) who has been previously deported or removed from the United States; (3) and thereafter reentered the United States; (4) without permission. 8 U.S.C. § 1326(a). An alien is "any person not a citizen or national of the United States." 8 U.S.C. § 1101(a)(3); United States v. Esparza, 678 F.3d 389, 392 (5th Cir. 2012).

Mr. Herrera-Perez submits that there is, at best, conflicting evidence regarding his status as an "alien." On the one hand, Guadalupe Herrera-Perez has admitted that he is a native and citizen of Mexico and that he first entered the United States without inspection and has never possessed any lawful status in the United States.[10] But, on the other hand, Mr. Herrera-Perez submits that he has neither a U.S. birth certificate nor a Mexican birth certificate.[11]

---

[10] And the government submits a Certificate of Nonexistence of Record in which the Field Director of the New Orleans Field Office, Citizenship and Immigration Services, U.S. Department of Homeland Security, certifies that a search of records and a review of the A file:
> indicates that there is no evidence of [Guadalupe Herrera Perez] ever being lawfully admitted for permanent residence. [Herrera Perez] has admitted alienage on a single occasion and was deported on May 24, 2013. There is no evidence in the record that the below named Subject ever applied for permission to re-enter the United States after removal (deportation).

[11] The Mexican government issued a Proof of Lack of Registration, which states that, when it searched for a birth certificate for Guadalupe Herrera-Perez whose parents are Guadalupe Herrera and Dolores Manuela Perez Medina, "no birth record was located as of

At most, Mr. Herrera-Perez presents a factual dispute concerning his citizenship or alienage that is only properly resolved by the trier of fact. Mindful that the Court cannot consider evidence outside of the charging document and must take the allegations as true when considering a motion to dismiss the indictment or bill of information, the defendant's request to dismiss the bill of information on this basis must be denied.

Accordingly, for the foregoing reasons, the defendant's motion to dismiss indictment is DENIED.

New Orleans, Louisiana, January 15, 2020

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE

---

November 3, 1978 to date in the computer system of this central court of the civil registry of the federal district." Mr. Herrera-Perez also points to his siblings' birth certificates, documents "evidencing that Herrera-Perez's siblings...were born in the State of Texas."